823 P.2d 766

**Thomas W. SYTH and Cindy Syth, husband and wife, plaintiffs-respondents,**

**v.**

**David L. PARKE, D.C., and B.C. Rene Parke, husband and wife, dba Pend Oreille Chiropractic Center, defendants-appellants.**

**Thomas W. SYTH and Cindy Syth, husband and wife, plaintiffs-appellants,**

**v.**

**David L. PARKE, D.C., and B.C. Rene Parke, husband and wife; David D. Cox and Patricia B. Cox, husband and wife, dba Pend Oreille Chiropractic Center, defendants-respondents.**

Nos. 18437, 19367.

Supreme Court of Idaho,
Coeur d'Alene Term, October 1991.

Dec. 20, 1991.

Cosho, Humphrey, Greener & Welsh, Boise, Idaho, for defendants-appellants. Kathryn A. Sticklen argued.

Howard & Owens, Coeur d'Alene, Idaho, for plaintiffs-respondents. R. Bruce Owens argued.

ON REHEARING

BAKES, Chief Justice.

By order dated July 29, 1991, this Court granted the Syths' petition for rehearing. The Court received additional

briefing and heard oral argument on the petition on October 7, 1991. Appellants Syths' petition for rehearing asserts primarily that our original opinion was in error for failure to recognize that, while appellants' original appeal was pending, the Syths filed a Motion to Suspend the Appeal on October 13, 1989, requesting this Court to stay further action on the appeal "upon the grounds and for the reasons that the appeal may be mooted by the fact that the Order Granting a New Trial is currently under advisement by way of the trial court's own motion and Appellants are presently waiting for the Court's decision." The petition for rehearing points out that on November 13, 1989, the Clerk of this Court issued an order granting the motion to suspend the appeal for a period of sixty days. Accordingly, the appellants argue that the effect of that order was to return jurisdiction to the district court to rule on its own *sua sponte* motion to reconsider its prior order granting a new trial in this matter.

Motions for suspension of appeals are permitted under I.A.R. 13.2, which provides that, "An order suspending an appeal will state the duration and any conditions of such suspension, which may be terminated or extended by further order of the court...." [1] The November 13, 1989, order issued by the Clerk suspended the appeal for sixty days, but did not set out any other "conditions of such suspension."

I.A.R. 13.3, on the other hand, is the rule authorizing "a case to be remanded to the district court or to the administrative agency to take further action as designated in the order of remand." The effect of such a remand under I.A.R. 13.3 is that "the district court or administrative agency shall have jurisdiction to take all actions necessary to fulfill the requirements of the order of remand." [2]

The motion filed on October 13, 1989, by the appellants Syths did not seek a remand to give the district court "jurisdiction to take all actions necessary to fulfill the requirements of the order of remand" under I.A.R. 13.3. The appellants Syths' motion, to which respondents did not object, and which was granted by an order issued by the Clerk of this Court, only stayed the processing of the appeal, *i.e.*, the preparation of the clerk's and reporter's transcripts, and the briefing by the parties. The order did not remand the case to the district court "to fulfill the requirements of the order of remand." Therefore, the order issued by the Clerk of the Court on November 13, 1989, did not reinvest the trial court with jurisdiction to rule upon its own *sua sponte* motion to reconsider its prior order granting a new trial.

■ Furthermore, even if an order had issued from this Court under I.A.R. 13.3, remanding the case to the district court so it could rule upon its own *sua sponte* motion for reconsideration of its prior order granting a new trial, there is no authority for a district court to reconsider an order granting a new trial, as our opinion issued in this case points out. *Spivey v. District Court*, 37 Idaho 774, 219 P. 203 (1923) ("[T]he clear intent of our statutes is that an order either granting or denying a new trial is final and the only remedy is by appeal."); I.R.C.P. 11(a)(2)(B) ("[T]here shall be no motion for reconsideration of an order of the trial court entered on any motion [granting a new trial] filed under

---

1. · **Rule 13.2. Suspension of appeal.**—Proceedings in an appeal before the Supreme Court may be suspended only by order of the Supreme Court on motion showing good cause. An order suspending an appeal will state the duration and any conditions of such suspension, which may be terminated or extended by further order of the court upon application of any party or upon the initiative of the Court.

2. **Rule 13.3. Temporary remand to district court or administrative agency.**—(a) Remand by the Court. At any time before the issuance of an opinion, the Supreme Court may on its own motion, or on motion of any party showing good cause, order a case to be remanded to the district court or to the administrative agency to take further action as designated in the order of remand.

(b) Effect of Remand. During a remand to the district court or administrative agency the appeal shall remain pending in the Supreme Court, but the district court or administrative agency shall have jurisdiction to take all actions necessary to fulfill the requirements of the order of remand.

Rules ... 59(a)....”). Accordingly, we adhere to our original opinion in this matter.

■ After the issuance of our opinion in this matter on May 23, 1991, 121 Idaho 156, 823 P.2d 760, the Syths filed another notice of appeal (S.Ct. No. 19367) on June 10, 1991, appealing “from the Order Granting a New Trial for Defendants entered in the above entitled action on the 1st day of August, 1989.” On June 13, 1991, the Clerk of the Court issued an order conditionally dismissing the second notice of appeal in No. 19367 on the ground that “[i]t appears that the NOTICE OF APPEAL was not filed within forty-two (42) days from the date of entry of the final Order entered August 1, 1989....” The appellants Syths objected to the conditional order of dismissal, and this Court held oral argument on the objection on October 7, 1991. We have reviewed the record and conclude that the second notice of appeal, No. 19367, was not timely under I.A.R. 14, which requires that the notice of appeal be filed within forty-two days of the filing of the judgment or post trial order appealed from. Nearly two years elapsed from the filing of the order granting a new trial on August 1, 1989, to the filing of the notice of appeal, S.Ct. No. 19367. Accordingly, the notice of appeal in No. 19367 must be dismissed because it was not timely filed. The timely filing of a notice of appeal is jurisdictional. I.A.R. 21.

Costs on rehearing to respondent. No attorney fees allowed.

JOHNSON and McDEVITT, JJ., concur.

BISTLINE, Justice concurs in the opinion of Justice BOYLE, and now dissents to the majority opinion based on the content of his earlier opinion filed May 23, 1991, 121 Idaho 156, 823 P.2d 760 which is not withdrawn and to which is added the following:

The Chief Justice, in authoring the majority opinion, has drawn on the vast knowledge of prior cases which he has accumulated in twenty years on the Supreme Court bench, and produced the one case which seemingly fills the bill for eradicating the efforts—as well as the result—of a

district judge who entertained doubts as to his initial ruling serious enough that he wished to reconsider the respective arguments of the parties.

The prior Idaho case which best suited the view that the district court erred in reconsidering an order which he had just entered granting the defendants a new trial was *Spivey v. District Court,* 37 Idaho 774, 219 P. 203 (1923). During my tenure on the court, *Spivey* has been cited only three times. In *Clark v. Ada County Bd. of Comm'rs,* 98 Idaho 749, 572 P.2d 501 (1977), *Spivey* was cited but not relied upon in regard to any issue presented in the instant case. The reported opinion clearly suggests that the issue there was the validity of a minute entry which did not bear the court's signatures.

*Spivey* was next cited in *Iverson v. Gordon Farming Co.,* 103 Idaho 527, 650 P.2d 669 (1982), in the concurring opinion of Bistline, J., which did not gain one vote. The last and most recent citation of *Spivey* was in *Hamilton v. Rybar,* 111 Idaho 396, 724 P.2d 132 (1986), wherein a four-one majority, per Shepard, J., determined as follows:

As demonstrated by the above set forth chronology, Hamilton's motion for a new trial was filed within ten days of the entry of judgment and hence was a *timely* motion which terminated the 42–day period of time within which to appeal. The motion for new trial was denied by order dated September 10, 1985, which reinstated the 42–day period within which an appeal should have been filed. The motion for reconsideration was not filed within ten days of the order denying the motion for new trial, and was filed approximately 90 days after the entry of judgment.

As this Court has observed in the past, the Idaho Rules of Civil Procedure do not provide for a petition to reconsider. Nevertheless, *such a motion has been treated as a motion to alter or amend judgment pursuant to I.R.C.P. 59(e).* *Obray v. Mitchell,* 98 Idaho 533, 567 P.2d 1284 (1977).

Even assuming that Hamilton's motion to reconsider the court's denial of the motion for reconsideration could be considered by the court as a motion to alter or amend the judgment under Rule 59(e), the motion was untimely since not filed within the ten days specified by I.R.C.P. 59(e). 'Since the motion was not filed within ten days of entry of judgment, the court had no power to grant the requested relief.... The motion was properly denied.' *Wheeler v. MacIntyre*, 100 Idaho 286, 596 P.2d 798 (1979). *See also Spivey v. District Court*, 37 Idaho 774, 219 Pac. 203 (1923); *Turner v. Evers*, 726 F.2d 112 (3d Cir.1984); *American Sec. Bank v. Harrison Realty*, 670 F.2d 317 (D.C.App.1982).

We hold, therefore, that the portion of this cause purporting to be an appeal from the judgment or from the denial of the motion for new trial is hereby dismissed as being untimely filed. As to that portion seeking to appeal from the denial of the motion for reconsideration since even if it be considered as a motion to alter or amend the judgment, the motion was not timely filed.

*Hamilton*, 111 Idaho at 397, 724 P.2d at 133 (emphasis added).

The salient portions of the Bistline, J., dissenting opinion were:

The question here which the majority avoids can be stated thusly: Can a procedural practice of longstanding and regular utilization become a part of the law?

Here, without answering that question, the majority also avoids any confrontation with the singular fact that the custom was indulged by both of the parties. It is true, as the majority asserts, that plaintiff Connie Hamilton's motion for reconsideration was not filed within ten days after the entry of the order denying her motion for new trial. What is equally true, however, and *unmentioned by the majority, is that a hearing was had on the motion for reconsideration,* where appearances were made on behalf of defendant David Rybar, counsel present being Terry R. McDaniel of Brady & McDaniel, and on behalf of Connie Hamilton by Byron K. Meredith for By-

ron K. Meredith and Wm. J. Brauner. The court, the Honorable W.E. Smith, District Judge, took the motion under advisement and on October 21, 1985 filed a written decision wherein he considered the applicability of *McDonald v. Safeway Stores, Inc.*, 109 Idaho 305, 707 P.2d 416 (1985), which opinion had not been released when the motion for new trial was first considered and denied.

The Court has been furnished with a transcript of the argument which was presented by Mr. Meredith and Mr. McDaniel at that hearing. Of extreme significance, counsel for Mr. Rybar did *not* file any written objection to the timeliness of the motion for reconsideration and at the hearing counsel for Mr. Rybar did *not* raise any question as to the timeliness of the motion. What Mr. McDaniel argued to Judge Smith was that the *McDonald* case was distinguishable and therefore inapplicable. When counsel had been fully heard from, Judge Smith stated: 'All right, I'll take another look at it and will give you a decision in due course.'

....

I would venture that in at least one out of three cases that comes before this Court the record will contain one or more motions for reconsideration. As just one ready example, *Green v. Bannock Paving*, 111 Idaho 3, 720 P.2d 186 (1986), there was such a motion. The procedure is very much a part of our Idaho practice, and with today's opinion the practice will continue. And it seems to have served a good purpose. In the last year there were two cases where the district judge on reconsideration completely reversed his earlier decision.

One such case is *Kleiber v. City of Idaho Falls*, 110 Idaho 501, 716 P.2d 1273 (1986). In *Kleiber*, defendant filed a motion for summary judgment, which was denied by the district court on January 10, 1984. On January 12, 1984, defendant filed a motion for reconsideration, which read as follows:

COMES NOW the above-entitled Defendant, by and through its counsel of record, pursuant to Rule 56 of the Idaho Rules of Civil Procedure, and move this Court to reconsider its Memorandum Decision and Order entered as regards Plaintiff's prior Motion for Summary Judgment in this matter, and to reconsider Defendant's Motion for Summary Judgment.

On February 8, 1984, defendant filed a memorandum in support of its motion to reconsider, which it later supplemented on February 27, 1984. On June 15, 1984, the district judge changed his mind and reversed his prior January 10, 1984 ruling. He stated:

This matter is again before the Court at the request of the parties for reconsideration of the decision offered in the prior Memorandum Decision.

*Hamilton*, 111 Idaho at 397–400, 724 P.2d at 133–36 (Bistline, J., dissenting) (emphasis added).

That *Spivey* is inappropriately applied by the majority as a purported basis for its opinion today is further buttressed by devoting five minutes to the final two pages of the opinion at 37 Idaho at 780–81, 219 P. at 204–05. Such a reading exercise brings forth the indelible conclusion that "then was then," and "now is now." In "then" times, the *Spivey* court held that:

Under Const., art. 5, sec. 13, the legislature may regulate by law the method of procedure in the district courts. The granting of a new trial is regulated by C.S., secs. 6890 and 6891. Notice of intention to move for a new trial must be given within ten days after the verdict or after notice of the decision of the court. (C.S., sec. 6890.) The application for a new trial should be heard at the earliest practicable time after notice of the motion if it is to be heard upon the minutes of the court, and in other cases after the affidavits are filed. (C.S., sec. 6891.) C.S., sec. 6893, also gives the court the power to grant a new trial on its own motion in certain contingencies, but it is not contended that this section has any application, and manifestly it cannot have, for reasons given in *Merchants'*

*Protective Assn. v. Jacobson*, 33 Ida. 387, 195 Pac. 89 [ (1921) ]. This is a plain case of a district judge permitting the motion for a new trial to be renewed and reversing his former order. We conclude that it was not the intent of the legislature that this should be done. On the contrary, the clear intent of our statutes is that an order either granting or denying a new trial is final and the only remedy is by appeal.

*Spivey*, 37 Idaho at 780–81, 219 P. at 204–05.

The court's procedures as of more recent times, i.e. "now," many years since *Spivey*, are not based on statutes, but fall under the court's own self-promulgated Rules of Civil Procedure. Such being the actual current state of affairs, the *Spivey* decision has no bearing whatever on the instant case, and is but a matter of historical significance.

As noted in the majority opinion of 121 Idaho 156, 823 P.2d 760 (1991), the Chief Justice wrote that "[t]here is no exception in Rule 13(b) granting the district court power to entertain its own motion to reconsider an order." To that proposition, a ready response is that "there is no provision in Rule 13(b) prohibiting the district court from entertaining its own motion to reconsider an order granting a new trial." At one time or another, some member of this Court has written to caution, admonish, or remind the Court as a whole why and wherefore there are rules: "These rules shall be liberally construed *to secure the just*, speedy and inexpensive determination of every action and proceeding." I.R.C.P. 1(a). First and foremost of these three goals, and so it should be, is achieving JUSTICE. For reasons stated by Justice Boyle, the system will operate more efficiently, more fairly, and will avoid unjust results by eschewing inclinations to reverse district courts by the overly technical applications of the Court's rules.

The majority, by a squeamishly narrow margin of a 3–2 vote, is bent on such technical application. The determination to do so is presumably based on curtailing the

authority of the district courts. Yet it is the responsibility of those courts to preside over trials, and upon them also is the additional obligation to rule on post-verdict, post-judgment motions in order to ascertain whether justice has been achieved, and if not, then to take such action as will ensure that justice is done. In that regard, the Supreme Court's function is that of second-guessing. In a proper case, and in the interests of justice, this Court intervenes. Be that as it may, this appeal does not present such a scenario, and instead will be viewed as the putting down of a district court which sought only to reconsider the validity of its decision granting a motion for a new trial. Moreover, the majority's *ratio decedendi* in so doing illustrates it is oblivious to what it is doing—i.e., instructing the district courts that they need not be overly concerned as to the correctness of any given determination or conclusion. Otherwise put, "District Judges, with all deliberate haste, rule when called upon to do so, but from then on, fret not—because this Court will in due time (and with considerable expense to litigants) come forth with the correct answers." On previous occasions, I have observed a truism which flows from over forty years of experience as an advocate and as an appellate jurist: It is the attorneys involved who will best know and understand the controversy. Second to the attorneys is the trial judge, and third, the appellate courts.

It is beyond cavil that this Court has recognized previous motions to suspend appeals, and has entered orders accordingly. One such order was entered in this case. It is in poor grace for the majority to single out this particular case as an opportune time for retromingently ruling otherwise. The majority acts unbecomingly in its *ipse dixit* that *this Court's* order of November 13, 1989, suspending the appeal, did not give leave to the district court to on its own motion reconsider its earlier decision on defendant's motion for a new trial.

The majority also talks in tongues, *i.e.*, "the order issued by the Clerk of the Court …" Each and every member of the Court received a copy of that order of 13 November, 1989. To a man, each of us acquiesced in it. Of substantial significance, the order recited "[n]o objection was filed by Respondents"; and based upon that predicate, the order continued, "therefore good cause appearing, IT IS HEREBY ORDERED that the MOTION TO SUSPEND THE APPEAL be, and hereby is, GRANTED." *That* was the order of this Court.

It comes far too late in the day for those who comprise today's majority, who *now* apparently see things differently, to not accept full responsibility for their inaction upon learning that this Court was suspending the appeal. Each and every one of us at all times had immediate access to the moving papers which clearly illustrated that the declared purpose of the stay was to allow the district court time in which to reach a decision as to whether there would or would not be a change in the earlier decision. The defendants-respondents indulged in that procedure. Five members of this Court indulged likewise.

The Clerk of the Court was completely within the bounds of this Court's directives in issuing the order, there being no objection by the defendants, who inferentially were as interested as the plaintiffs in providing the district judge with adequate time to reach a determination which was fully satisfactory to the judicial intelligence and conscience. The readers who are to any extent acquainted with counsel for the parties know they are of such caliber and competence that it cannot be doubted that both sides to the controversy would have honored a request from the district court to present a stipulation putting the case on hold so as to give the court a further opportunity to reflect upon the granting or denying of a motion for a new trial.

BOYLE, Justice dissenting.

I am unable to concur in the majority decision and respectfully dissent. Although I intend to be bound by the holding of the lead opinion in future cases involving the issues presented here, I feel it necessary to register my dissent because the instant case presents extraordinary circumstances which justify the district court's discretionary actions in opening the August

1, 1991 written order. In my view, this is one of those occasions when the time requirements of the Rules should be construed liberally, as directed by the mandatory language in I.R.C.P. 1(a), "... to secure the just, speedy and inexpensive determination of every action and proceeding."

The issues presented on this appeal are two-fold. The first is whether the trial court erred in opening the order granting a new trial more than fourteen days after entry of judgment, and secondly, whether the trial court erred in ruling to deny the motion for new trial. Under the unique and unusual circumstances of this case, I am of the opinion that the trial court did not err in either respect.

The majority opinion correctly sets forth the chronology of the procedural motions and orders presented before the trial court, however, for purposes of my dissent the following dates are significant. On July 17, 1989, the trial court orally granted defendants' motion for new trial. Two days later on July 19, 1989, the plaintiffs filed their motion requesting the trial court to reconsider its order granting a new trial. On August 1, 1989, the trial court entered a written order granting a new trial based on juror misconduct.

On August 25, 1989, a telephonic conference was held on plaintiffs' motion for reconsideration which the trial court denied. In addition, the trial court at that time also denied a Rule 60(b) motion asserted on the grounds of newly discovered evidence. However, according to the clerk's minutes of the August 25, 1989 hearing, the trial court orally advised the parties that he was *sua sponte* opening the August 1, 1989 order which had granted defendant a new trial. Unfortunately, a transcript of that hearing is not before us. Notwithstanding the absence of a reporter's transcript, the minutes of the August 25, 1989 hearing clearly state that the trial court advised the parties that he was opening the order granting a new trial. Further evidence of the trial court's intent in opening the August 1, 1989 order is manifest in the November 13, 1989 order wherein it is stated "[o]n August 25, 1989, the Court denied

plaintiffs' Motion for Reconsideration but reopened the order granting a new trial *on the court's own motion* for the purpose of additional argument so as *to prevent manifest injustice."* (Emphasis added.)

It was not until September 5, 1989, that the first notice of appeal was filed. At the August 25, 1989 hearing, ten days before any appellate proceedings were commenced, the trial court recognized the potential error and advised the parties that he had opened the August 1, 1989 order. At the time the first notice of appeal was filed on September 5, 1989, the original motion for new trial was pending before the trial court as a result of its *sua sponte* motion opening the order granting a new trial. Idaho Appellate Rule 13(b) expressly allows a trial court to "[r]ule upon *any* motion for new trial" (emphasis added), even *after* the filing of a notice of appeal. Accordingly, there was no error.

Notwithstanding my interpretation of the applicable rules governing the procedural posture of this case, there are portions of the majority opinion with which I agree. First, it is settled beyond dispute that "there shall be no motion for reconsideration of an order of the trial court entered on any motion filed under Rule [ ] ... 59(a)." *See* I.R.C.P. 11(a)(2)(B); I.A.R. 13; *Hells Canyon Excursions, Inc. v. Oakes,* 111 Idaho 123, 721 P.2d 223 (Ct.App.1986). I likewise agree with the majority that once an appeal is perfected the trial court is generally divested of jurisdiction to take any further action in the case, *H & V Engineering v. Board of Professional Engineers,* 113 Idaho 646, 747 P.2d 55 (1987); *First Security Bank v. Neibaur,* 98 Idaho 598, 570 P.2d 276 (1977); *Hells Canyon Excursions, Inc. v. Oakes,* 111 Idaho 123, 721 P.2d 223 (Ct.App.1986), as obviously qualified by I.A.R. 13(b). It is also well established that a trial court once having ruled on a motion for new trial ordinarily does not have jurisdiction to reconsider that decision, *Spivey v. District Court,* 37 Idaho 774, 219 P. 203 (1923); I.R.C.P. 11(a)(2)(B), and that I.R.C.P. 60(b)(6) was not intended to allow the trial court to reconsider the legal basis for its original decision granting or denying a motion for

new trial. *First Bank & Trust v. Parker Bros.*, 112 Idaho 30, 730 P.2d 950 (1986). However, in my view, the trial court's opening of the order in the instant action was not based on, or in violation of, any of the foregoing principles and was not in the form of a motion for reconsideration, which is clearly prohibited under Rule 11(a)(2)(B). Rather, the trial court recognized that juror misconduct was not shown to be a valid reason for granting a new trial and, exercising his inherent power to correct an injustice, simply opened or vacated the August 1, 1989 order.

Although the trial court does not state whether it was relying on any particular rule of procedure or other legal authority, it is clearly stated in the memorandum decision and order of November 13, 1989, that the trial court reopened the order granting a new trial on its own motion to *"prevent manifest injustice."* Clearly, the trial court was relying upon its inherent power to correct errors and prevent an injustice.

The United States Supreme Court recently had the opportunity to reassert the importance of the trial courts' inherent powers in their roles as "Courts of justice." In *Chambers v. Nasco, Inc.,* ⸺ U.S. ⸺, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), the Supreme Court stated:

> It has long been understood that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution," powers "which cannot be dispensed within a Court, because they are necessary to the exercise of all others." For this reason, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."

*Id.,* 111 S.Ct. at 2132 (citations omitted).

The issue in *Chambers* was the inherent power of a court to impose sanctions outside the rules, even though the Federal Rules of Civil Procedure already provided several methods for imposing sanctions. In allowing a trial court to exercise its inherent powers, the United States Supreme Court noted that its "prior cases have indicated that the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." *Id.* at 2135. Therefore, while a court should ordinarily rely on the rules rather than its inherent power, "if in the informed discretion of the court, neither the statute nor the rules are up to the task, the court may safely rely on its inherent power." *Id.* at 2136.

Although the issue in *Chambers* was the inherent power of a trial court to impose sanctions and fees, the legal analysis is analogous and applicable in the action presently before us. While the United States Supreme Court in *Chambers* was discussing the inherent powers of the federal courts, state courts are also vested with inherent powers. Indeed, as courts of general jurisdiction, state courts are at least as well armed as the federal courts to ensure that justice occurs within the walls of the courtroom.

This Court has long recognized that Idaho's courts are imbued with the inherent powers necessary to "achieve the orderly and expeditious disposition of cases," *id.* at 2132 (quoting *Link v. Wabash R. Co.,* 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962)), even when a rule or statute existed to accomplish the same task. In *State ex rel. Evans v. Click,* 102 Idaho 443, 631 P.2d 614 (1981), we unanimously upheld the inherent power of a district court to create and then later modify and broaden a lien to ensure that its order was complied with. While the Court recognized that the court's imposition of a lien "in effect replaced the security requirement for a bond," *id.* at 450, 631 P.2d at 621, we did not invalidate the court's action simply because a statute could have been used to accomplish the same function as the lien. Rather, it was "our conclusion that such action was within the inherent power of the court to insure compliance with not only the intent of the statute but also its own related orders." *Id.*

Not only may a court rely on its inherent powers when "neither the statute nor the rules are up to the task," *Chambers*, 111 S.Ct. at 2142, we have also recognized that a court has inherent power to modify its judgment even when the time periods set forth in the procedural rules have expired. In a case clearly analogous to the situation before us today, this Court allowed a trial court to amend its judgment even though the appeal period had expired and the judgment had become final. *St. John v. O'Reilly*, 80 Idaho 429, 333 P.2d 467 (1958). In upholding the exercise of the trial court's inherent power, this Court reasoned in *St. John* that the party disadvantaged by the amended decision was not prejudiced because they were able to test the validity of the court's amended judgment on the merits in their appeal.

This is precisely the same situation that exists in the present case. Defendant Parke was not prejudiced by the district court's reconsideration of its original order because he could still raise the merits of his claim of jury misconduct on appeal. In my view, the district court's exercise of its inherent power to reopen the order granting a new trial did not prejudice either party. As such, the exercise of its inherent power had only beneficial results by relieving the injustice created for Syth and retaining Parke's ability to raise their argument on the merits before this Court. Certainly, I do not suggest unfettered exercise of inherent powers. Rather, it is obvious that such implied powers must be exercised sparingly, with caution and limited in application to those highly unusual and unique circumstances where the ends of justice would be served.[3] In my view, such is the case before us.

In addition to inherent powers allowing the action of the trial court, the intent and scope statement set forth in I.R.C.P. 1(a) clearly provides that "[t]hese rules shall be liberally construed to secure the just,

speedy and inexpensive determination of every action and proceeding." In this action a jury trial had been conducted resulting in a verdict. Subsequent to the verdict, an issue was raised concerning juror misconduct. Initially, on August 1, 1989, a new trial was granted, however, that decision was subsequently considered to be incorrect and the trial court announced twenty-four days later on August 25, 1989, that the prior order was being opened. Obviously, that was more than the fourteen days allowed in Rule 59(b), (c) and (d). However, in my view, I.R.C.P. 1(a) and the inherent powers vested in the courts in the furtherance of justice in unusual and limited circumstances, provide the basis for the trial court's action in this instant case.

Having concluded that the district court did not err in opening the order granting a new trial, we come to the second issue of whether the district court erred in denying the motion for a new trial. A review of the jurors' affidavits in the record before us demonstrates to my satisfaction, as it apparently did to the district judge, that juror misconduct did not occur. Therefore, I conclude that the district court correctly reopened the case and denied the motion for a new trial.

The fundamental question raised is whether we will require the parties and the district judge to be bound to a decision granting a new trial that clearly appears to be erroneous. In my opinion, under these unusual, narrow and unique circumstances, we should uphold and affirm the decision of the district judge which acknowledged error in its prior order and took steps to correct that error without the unnecessary expense and delay of a new trial or an appeal. It appears illogical to me to grasp tightly to the inflexible time requirements of Rule 59(a), (c) and (d) particularly when the clear error was quickly identified by the trial court and corrected. We are not faced with a delay of months or years. Rather the trial court immediately recog-

---

**3.** Other cases have also recognized a court's inherent power. In *Fisher v. Fisher,* 84 Idaho 303, 371 P.2d 847 (1958), this Court acknowledged that while a consent decree must conform to the agreement of the parties, it is nevertheless still subject to the inherent powers of the court. *See also Feustel v. Stevenson,* 119 Idaho 698, 809

P.2d 1177 (Ct.App.1991), wherein our Court of Appeals affirmed modification in 1988 of a 1978 judgment as an action "within the court's inherent power to enforce judgments." 119 Idaho at 700, 809 P.2d at 1179. In addition, I.C. § 1–1603 has vested broad powers in the courts to ensure justice.

nized the erroneous ruling within days and, acting under the auspices of I.R.C.P. 1(a), took the necessary corrective action to open the order by exercising its inherent power.

Accordingly, I respectfully dissent.

BISTLINE, J., concurs.